IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI`I

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CR. NO. 06-00469 DAE |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| SYED QADRI,                (01) | ) | |
| PATRICIA ROSZKOWSKI,   (02) | ) | |
| RUBEN CARRILLO GONZALEZ, | ) | |
|    a.k.a. "Ruben Carrillo"   (03) | ) | |
| JEFFREY GREENHUT,       (04) | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

ORDER:  (1) DENYING DEFENDANT'S MOTION TO DISMISS
INDICTMENT AND SUPERSEDING INDICTMENT; AND (2) DENYING
DEFENDANT'S REQUEST FOR AN EVIDENTIARY HEARING

On March 8, 2010, the Court heard Defendant's Motion to Dismiss Indictment and Superseding Indictment.  Chris A. Thomas, Assistant U.S. Attorney, appeared at the hearing on behalf of the Government; Eric A. Seitz, Esq., and Della A. Belatti, Esq., appeared at the hearing on behalf of Defendant Qadri; Myles S. Breiner, Esq., appeared on behalf of Defendant Roszkowski; Pamela E. Tamashiro, Esq., appeared on behalf of Defendant Gonzalez; and Paul B.K. Wong, Esq., appeared on behalf of Defendant Greenhut.  After reviewing the motion and the supporting and opposing memoranda, the Court **DENIES** Defendant's Motion.

(Doc. # 324.) Furthermore, for reasons set forth below, the Court **DENIES** Defendant's request for an evidentiary hearing.

## BACKGROUND

On August 31, 2006, Defendant Syed Quadri ("Defendant"), along with co-defendants Patricia Roszkowski, Ruben Carrillo Gonzalez, and Jeffrey Greenhut (collectively, "Defendants"), were indicted for four counts of wire fraud. (Doc. # 1.) On May 13, 2009, a Superseding Indictment was filed against Defendants. (Doc. # 222.) Defendants were charged with fifty counts of wire fraud (Counts 1-50), conspiracy to commit money laundering (Count 51), and thirty-four counts of engaging in monetary transactions (Counts 52-85), and Roszkowski was charged with two counts of credit application fraud (Counts 86 and 87).

On June 18, 2009, Defendant filed his first motion to dismiss the Indictment and Superseding Indictment. (Doc. # 258.) According to Defendant, the Government had "engaged in a practice and pattern of delayed production of discovery, as well as delayed filing of the Superseding Indictment." (Id. at 1.) Specifically, Defendant believed that the Government's production of documents, electronic communications, audio and video recordings, and copies of the hard drives of thirty-seven computers was untimely.

On July 16, 2009, Magistrate Judge Chang issued a Findings and Recommendation ("F&R") to deny Defendant's motion to dismiss the Indictment and Superseding Indictment.  (Doc. # 274.)  Magistrate Judge Chang found that the "government's alleged failure to produce documents and other evidence to Defendants and the delay in filing the Superseding Indictment are not so grossly shocking and so outrageous as to violate a universal sense of justice," and that the Government's alleged actions did not "rise to a level of flagrant prosecutorial misconduct."  (Id. at 6-7.)  On August 26, 2009, after receiving no opposition to the F&R, Judge Helen Gillmor adopted the F&R.

On November 24, 2009, Defendant again filed a Motion to Dismiss Indictment and Superseding Indictment, in which all other defendants have joined.  (Docs. ## 327, 334, 348.)  On February 8, 2010, the Government filed an opposition.  (Doc. # 352.)  On February 16, 2010, Defendant filed a Reply.  (Doc. # 353.)

## STANDARD OF REVIEW

An indictment may be dismissed on two grounds: (1) "outrageous government conduct if the conduct amounts to a due process violation"; or (2) "if the conduct does not rise to the level of a due process violation, the court may nonetheless dismiss under its supervisory powers."  United States v. Chapman, 524

3

F.3d 1073, 1084 (9th Cir. 2008) (citing United States v. Barrera-Moreno, 951 F.2d 1089, 1091 (9th Cir. 1991)); see United States v. Smith, 924 F.2d 889, 897 (9th Cir. 1991). "Dismissal of an indictment is generally disfavored because it is considered a drastic step." United States v. Rogers, 751 F.2d 1074, 1076 (9th Cir. 1985); see United States v. Fuchs, 218 F.3d 957, 964 (9th Cir. 2000).

To dismiss on the first ground, "the Government's conduct must be so grossly shocking and so outrageous as to violate the universal sense of justice." Smith, 924 F.2d at 897 (citing United States v. Ramirez, 710 F.2d 535, 539 (9th Cir. 1983) and United States v. Citro, 842 F.2d 1149, 1152 (9th Cir. 1988)). To dismiss on the second ground, a district court may exercise its supervisory power "'to implement a remedy for the violation of a recognized statutory or constitutional right; to preserve judicial integrity by ensuring that a conviction rests on appropriate considerations; and to deter future illegal conduct.'" Chapman, 524 F.3d at 1085 (quoting United States v. Simpson, 927 F.2d 1088, 1090 (9th Cir. 1991)). A court generally may dismiss only in those cases where "flagrant prosecutorial misconduct" is evident, which may include reckless disregard for constitutional obligations but does not include accidental or negligent governmental conduct. Id.; see United States v. Kearns, 5 F.3d 1251, 1255 (9th Cir. 1993) (finding that dismissal of the indictment was not warranted despite

4

negligent or grossly negligent conduct).  Furthermore, "a court may dismiss an indictment under its supervisory powers only when the defendant suffers 'substantial prejudice,' and where 'no lesser remedial action is available.'" Chapman, 524 F.3d at 1087 (quoting United States v. Jacobs, 855 F.2d 652, 655 (9th Cir. 1988) and United States v. Barrera-Moreno, 951 F.2d 1089, 1092 (9th Cir. 1991)).

When a party seeks dismissal of an indictment for alleged violations of the right to a speedy trial, a court may evaluate four factors: the length of the delay; the reason for the delay; the defendant's assertion of his right to a speedy trial; and prejudice to the defendant.  Barker v. Wingo, 407 U.S. 514, 530 (1972); Doggett v. United States, 505 U.S. 647 (1992).  The length of delay is a threshold issue.  United States v. Gregory, 322 F.3d 1157, 1161 (9th Cir. 2003).  "[T]he length of the delay that will provoke [inquiry into the other factors] is necessarily dependant upon the peculiar circumstances of the case."  Id.; see United States v. Mendoza, 530 F.3d 758, 762 (9th Cir. 2008).  "[T]he prosecution bears the burden of explaining pretrial delays."  McNeely v. Blanas, 336 F.3d 822, 827 (9th Cir. 2003).

The fourth factor, prejudice, "'should be assessed in the light of the interests of defendants which the speedy trial right was designed to protect.'"

Gregory, 322 F.3d at 1163 (quoting Barker, 407 U.S. at 532).  These interests include preventing oppressive pretrial incarceration, minimizing anxiety of the accused, and limiting the possibility that the defense will be impaired.  Barker, 407 U.S. at 532.  These four factors must be considered together by the court along with any other circumstances that may be relevant.  Id. at 533; see also United States v. Drake, 543 F.3d 1080 (9th Cir. 2008) (applying the Barker factors).

## DISCUSSION

I.  Motion to Dismiss Indictment

Defendant argues that there have been "considerable" delays in production of discovery and that the Superseding Indictment was untimely filed.  Defendant contends that both are violative of Defendant's right to a speedy trial.  In support of these two points, Defendant emphasizes that the Superseding Indictment was filed nearly three years after the original indictment, and presents a time line of events to describe the delays in discovery.

The delay of nearly three years creates a presumption of prejudice.  See Mendoza, 530 F.3d at 762 ("Generally, a delay of more than one year is presumptively prejudicial . . . and triggers an inquiry into the other three factors.").  However, for the reasons set forth below, other factors weigh against dismissing the indictment in this case.

Defendant submits the declaration of Eric Seitz, defense counsel, which presents a detailed chronology of events intended to describe the delays in discovery. According to Seitz, he outlines "the flagrant and willful history of discovery delays related to seized paper documents and files in this case from the filing of the original Indictment to June 18, 2009." (Seitz Mot. Decl. ¶ 3.) The declaration raises many objections to the way in which the Government has proceeded with its case. In particular, Seitz attests that on July 27, 2007, Assistant U.S. Attorney Chris Thomas provided defense counsel with a list of thirty-two computer hard drives and three servers that could be cloned and accessed for examination by August 2007. (Id. ¶¶ 4-5.) Defendant purportedly contacted the Government about the computer hard drives, but by September 2007 the Government had still not provided access to the computers. (Id. ¶¶ 6-13.) Defendants were particularly concerned about the possibility that the computers might have to be moved for an interlocutory sale of computers seized in a separate case. In October 2007, various communications ensued regarding access and inventory of the computers. (Id. ¶¶ 13-16.) However, according to Defendant, as of January 11, 2008, Defendant had received only seventeen of the thirty-two hard drives. (Id. ¶ 17.) Also according to Defendant, the Government did not adequately respond to requests for documents, including investment contracts or

agreements, produced evidence "piecemeal" over an extended period of time, and "dumped" thousands of unresponsive documents onto Defendants.

After the Superseding Indictment was filed on May 13, 2009, the communication between Defendant and the Government regarding discovery resumed. According to Defendant, counsel would "persistently call and e-mail Mr. Thomas about the status of discovery, and Mr. Thomas would fail to respond to Defendants' counsel's inquiries." (Id. ¶ 24.) On July 7, 2009, Thomas allegedly informed defense counsel that documents relating to the Superseding Indictment would be available for pick up by July 2, 2009, but Seitz asserts that his office did not receive a computer disk copy of the document until July 14, 2009. (Id. ¶¶ 25-26.) Seitz contends that the documents produced did not include all of the investment contract requests. (Id. ¶ 27.)

On August 27, 2009, defense counsel contacted Magistrate Judge Kurren to inform him of two "outstanding discovery matters that needed the Court's attention because of the Government's lack of response. These matters included witness contact information and the computer hard drive discovery." (Id. ¶ 28; Mot. Ex. 8.) On September 25, 2009, counsel met to discus the problems encountered with processing or viewing the computer hard drives. (Seitz Mot. Decl. ¶ 30.) Communication from defense counsel to the Government regarding

8

problems accessing all the hard drives continued through November 2009. (Id. ¶¶ 31-44.)  Defendant argues that the Government technically complied with the Court's order to provide defense counsel with a process for obtaining computer hard drive discovery, but that the Government delayed outlining a sufficient process because it was "still exploring options." (Id. ¶ 44.)  Seitz concludes by saying that "[i]n light of the unique facts and circumstances of this case where delays have been predicated upon the Government attorney's failure to respond to Defendants' attorney's repeated calls, e-mails, and letters, and failure to provide sufficient and timely discovery responses, [he has] no confidence that sufficient access will be provided either to the fifteen computers that have still been withheld . . . or . . . the corporations' main servers." (Id. ¶ 46.)

   In Opposition to Defendant's motion, the Government responds by arguing that the complex nature of the investigation required a more lengthy and extensive discovery process.  (Opp'n at 11.)  The Government characterizes the alleged acts as being akin to a Ponzi scheme, and explains that the Government had to contact numerous witnesses from across the country who were investors in the defendants' company. (Id.)  The Government acknowledges that there were delays in the discovery process, but attributes the delay to the complexity of the case and the scope and nature of the discovery. (Id. at 15.)  For example, the Government

sent defense counsel a letter dated October 5, 2007 providing the inventory of computers and advising defense counsel that preserving the integrity of digital evidence is a fragile and time consuming process. (Opp'n Ex. F at 1.)

The Government also contends that Defendant has "picked out" certain discrepancies in the discovery process but ignores the fact that over 30,000 pages of documents have been provided in discovery, along with electronic communications, audio and video records, and transcripts. (Opp'n at 12.) The Government further counters that Defendants were provided with copies of the hard drives from the thirty-seven[1] computers. (Id.)

Further complicating the discovery process, there appears to have been some dispute as to whether Defendants were able to "read" the server drives and whether Defendants had access to forensic software. (Id. at 21.) After some negotiations with the FBI, particularly involving security concerns, the Government concluded that it would not be able to provide separate office space and personnel to allow defense counsel to separately access the computers. (Id. at 22.) Defense counsel was therefore instructed to acquire their own forensic software to independently review the computers. (Id.)

---

[1] There is a discrepancy in the record about whether there are thirty-two or thirty-seven computers at issue. Nevertheless, the dispute between the parties remains the same.

Despite Defendant's characterization of delays as almost entirely the fault of the Government, in actuality the continuances of Defendant's trial date thus far have been granted at the request of a defendant and/or been agreed to by all parties.  Eight trial continuances have been granted thus far as to Defendant, with all counsel in agreement to the continuance and time excluded from computation. (Docs. ## 65, 106, 133, 172, 202, 248, 298, 331.)  This Court's review of the record can find no objection by Defendant to any of the continuances at the time they were ordered, and each continuance was granted by order of the court upon review of the request.  The record does not indicate that any delay or continuance was a "deliberate attempt to delay proceedings to hamper the defense." McNeely, 336 F.3d at 827.  At the hearing on this matter, defense counsel acknowledged that Defendants do not argue that the technical requirements of the Speedy Trial Act have not been met.

The Court acknowledges that discovery might have been produced more expeditiously, however, the Court does not deem the delays in this case to be so egregious as to warrant dismissal of the Indictment and Superseding Indictment.  It appears that the delays in this case may be attributed at least in part to the nature of electronic discovery, the complex nature of the alleged crimes, and the necessity of coordinating various branches of government in the investigation.  Even if this

Court were to attribute some of the delays to accidental or negligent conduct, these delays do not weigh so heavily as to warrant dismissal. Chapman, 524 F.3d at 1085. There is absolutely no evidence currently before this Court that any delays, or the filing of the Superseding Indictment, were the result of reckless disregard of constitutional rights by any government personnel. Nor does the Government's actions appear to be motivated by bad faith. See United States v. Williams, 547 F.3d 1187, 1202 (9th Cir. 2008) (upholding a district court's refusal to dismiss the indictment when the district court found, inter alia, an absence of bath faith). It also does not appear that the Government purposefully withheld evidence or misrepresented evidence. Magistrate Judge Chang and Judge Helen Gillmor concluded likewise when Judge Gillmor adopted the F&R denying a motion to dismiss on these very issues in August 2009.

  At the hearing on this matter, counsel for all parties agreed that to date Defendants have been provided everything that was seized by the Government during the investigation.[2] Due to the volume of data, Defendants are apparently still in the process of downloading the information. Nevertheless, seven months

---

[2] The Government contends that the computer servers were, in fact, given to Defendants as early as December 2008. Defendants argues that the data was not accessible, and it was not until December 2009 that Defendants had access to the information on the services.

before trial, Defendants have been provided with the evidence. Whether Defendants have their own difficulties accessing that data is another matter, and these difficulties do not speak to whether the Government has engaged in misconduct.

Moreover, the Court notes that the trial date has been pushed back since the filing of the motion, at Defendant's request. At the time Defendant filed the instant motion to dismiss, trial was set for March 16, 2010. The primary prejudice that Defendant claims in his motion is that he might not have been able to adequately prepare for a March 16 trial date. (Mot. at 3.) Trial is currently scheduled to begin on October 13, 2010. Defense counsel does not now argue that counsel cannot adequately prepare for the October 13, 2010 trial date, which is approximately seven months away.[3] The Court also notes that Defendant does not claim that material evidence has been lost due to the delay.[4] Furthermore,

---

[3] At the hearing, defense counsel did comment that, once Defendants finish reviewing the evidence provided to them by the Government, Defendants might determine that they cannot prepare in time for the October trial. At this time, this statement is merely speculation.

[4] At the hearing, defense counsel stated that Defendants have had difficulty finding certain witnesses from various locations around the world. Defendants did not brief this issue in their motion, and therefore the Court will not reach it. At the hearing, defense counsel did not elaborate on this statement, nor did counsel actually argue that it was the delay in the case that caused this difficulty, as opposed to the unique facts on the case itself and the breadth of the alleged

Magistrate Judge Kurren directed counsel to contact the court to schedule a discovery conference should any problems arise. This Court therefore concludes that Defendant has not established prejudice, and that the delays in this case do not warrant a dismissal of either the original Indictment or the Superseding Indictment.

Accordingly, Defendant's motion is DENIED.

II.     Request for Evidentiary Hearing

At the hearing on this matter, defense counsel requested for the first time that this Court hold an evidentiary hearing to determine whether the Government has acted in bad faith and misrepresented the evidence available to Defendants. Although this Court has already determined that there has been no violation of the Speedy Trial Act, the Court has nevertheless also reviewed the record for equitable considerations that may warrant an evidentiary hearing. The Court finds that the facts do not warrant an evidentiary hearing.

An evidentiary hearing is generally required "only when the moving papers allege facts with sufficient definiteness, clarity, and specificity to enable the trial court to conclude that contested issues of fact exist." United States v. Howell, 231 F.3d 615, 620 (9th Cir. 2000) (citing United States v. Walczak, 783 F.2d 852, 857 (9th Cir. 1986) (finding that the defendant was not entitled to an evidentiary

---

criminal activity.

14

hearing on his motion to suppress). An evidentiary hearing on a motion to dismiss an indictment based on governmental misconduct is required if a defendant raises a material issue of fact "which if resolved in accordance with [the defendant's] contentions would entitle him to relief." United States v. Irwin, 612 F.2d 1182, 1187 (1980) (internal quotations and citations omitted). "On the other hand, if the affidavits show as a matter of law that [the defendant] was or was not entitled to relief, no hearing [is] required." Id.; see also United States v. Batiste, 868 F.2d 1089, 1092 (9th Cir. 1989) (holding that the district court properly granted the defendant's motion to suppress after holding evidentiary hearing).

      Defendant's request for an evidentiary hearing rests on discovery delays related to seized paper documents and computer files, as referenced above. Upon review of the evidence before the Court, there is no question that there have been numerous lapses of time in communication between Defendants and the Government. It is entirely possible that the Government could have been more expeditious in conducting its discovery obligations. That said, however, it is also clear from the record that the discovery involved extremely difficult and complex analysis, with a number of issues arising that the parties could not have anticipated. This appears to be particularly true regarding production and analysis of the computer servers, which is the primary point of contention between the parties at

this time. Defense counsel acknowledged at the hearing that, despite having the computer servers since at least December 2009, Defendants have still not yet access all the documents three months later. This very fact appears to bolster the Government's explanation that the computer discovery was a time-consuming process.

Assuming as true Defendant's contentions regarding the Government's conduct, the Court finds that those facts would not entitle Defendant to relief. Viewing the facts in the light most favorable to Defendants, the Court finds that at most there was negligence on the part of the Government in its failure to respond to communications expeditiously. Nothing before the Court, however, calls into the question the veracity of the Government's explanations for these delays.

As a matter of law, mere negligence without more does not warrant dismissal of an indictment. See Chapman, 524 F.3d at 1085. Therefore, an evidentiary hearing is not warranted. See United States v. Rewald, 889 F.2d 836, 860 n.23 (9th Cir. 1989) (finding that because the defendant had "failed to present factual allegations by affidavit that, if true, would warrant relief," the defendant was not entitled to an evidentiary hearing), amended by 902 F.2d 18 (9th Cir. 1990).

In support of the request for an evidentiary hearing, defense counsel directed this Court to United States v. Bernal-Obeso, 989 F.2d 331 (9th Cir. 1993). The Court finds this case to be quite distinguishable from the facts at hand, and therefore counsel's reliance on this case is unavailing. In Bernal-Obeso, the defendant appealed his conviction of conspiracy to possess a controlled substance based, in part, on his contention that he had been prevented from pursuing information that a key government witness had lied to the Government during discovery. Id. at 331. Only five days before trial, the Government had provided the defendant information that the witness, Cabrera-Diaz, had killed two people but had not been charged. Id. at 332. Defense counsel subsequently uncovered that almost all the information the Government had provided to the defendant about Cabrera-Diaz was incorrect, and immediately before trial was to begin, defense counsel renewed a motion for a continuance to allow counsel to prepare to impeach Cabrera-Diaz, who had actually been charged with two counts of murder and attempted murder, had not raised a claim of self-defense, and had pleaded guilty to two felony counts of voluntary manslaughter with a firearm enhancement. Id. The continuance was denied. Id. The Government ultimately admitted that "the Government did not provide defense counsel with the correct information regarding the [confidential informant's] prior record." Id. The Ninth Circuit found

17

that the Government should have "promptly rectified this lapse" before trial. Id. at 333. The Ninth Circuit was unable to "determine whether the informant lied to the DEA about his prior felony convictions, or whether [it was] just a case of sinless miscommunication." Id. The Ninth Circuit ordered an evidentiary hearing to determine whether the Government discharged its Brady and Giglio obligations to provide the defense with material exculpatory evidence and whether the Government intentionally deprived the defendant of evidence. Id. at 333, 336. The court was concerned that it was "dealing with the 'tip of an iceberg' of other evidence that should have been revealed." Id. at 333. If after the evidentiary hearing the district court were to "uncover egregious wrongdoing by the government," the district court might consider dismissing the indictment for outrageous government conduct. Id. at 337 (citing United States v. Restrepo, 930 F.2d 705, 712 (9th Cir. 1991)). In contrast, there is no question before this Court as to whether the Government has intentionally deprived Defendants of exculpatory evidence. There is simply no evidence before this Court that indicates the facts here rise to the egregious level seen in Bernal-Obeso.

Accordingly, Defendant's request for an evidentiary hearing is DENIED.

CONCLUSION

For the reasons stated above, the Court: (1) DENIES Defendant's Motion to Dismiss Indictment and Superseding Indictment; and (2) DENIES Defendant's Request for Evidentiary Hearing.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, March 9, 2010.

_____
David Alan Ezra
United States District Judge

United States v. Qadri et al., CR No. 06-00469 DAE; ORDER: (1) DENYING DEFENDANT'S MOTION TO DISMISS INDICTMENT AND SUPERSEDING INDICTMENT; AND (2) DENYING DEFENDANT'S REQUEST FOR AN EVIDENTIARY HEARING